ALLEN PLEDGER and THOMAS PLEDGER, plaintiffs in error, vs. JAMES McCAULEY, defendant in error.

*Motion to dissolve an injunction on the coming in of the answer, ought to be refused, unless all the equity set up in the bill is denied by the answer.*

In Equity, injunction from Catoosa county. Decided by Judge TRIPPE, October Term, 1857.

The facts of this case are sufficiently stated in the opinion of the Court.

AKIN, for plaintiff in error.

HOOPER ; and WALKER, *contra.*

*By the Court.*—McDONALD, J. delivering the opinion.

The error assigned in this case is on the refusal of the Court to dissolve the injunction on the coming in of the answers. The defendant, Thomas Pledger, had taken the assignment of twenty-five *fi. fas.* issued from a Justices' Court in favor of Hickman, Westcott & Co., against the complainant and Allen Pledger, the other defendant. He had ordered some of them to be levied on the property of the complainant, and others he had directed to be returned, and *ca. sas.* to be issued in their stead, and had ordered the complainant to be arrested thereon. The complainant then filed

this bill, enjoining the said executions against the property and the body of the complainant from proceeding, charging them to have been paid off with the money of the defendant, Allen Pledger, and fraudulently assigned to Thomas, for the purpose of harrassing the complainant. Among other things, the bill alleges a partnership to have existed between complainant and the defendant, Allen Pledger, in a mercantile concern, and in certain land and mills; that he sold to the said Allen his interest in both, for a consideration stated in the bill, and in this contract of sale the defendant, Pledger, undertook and agreed to pay off all partnership debts; that the debt on which the said assigned *fi. fas.* were issued, was a debt of the partnership, which the said Allen Pledger was bound to pay; that the said *fi. fas.* were paid by Allen Pledger, or by his father, Thomas Pledger, with Allen Pledger's money; and so far as the Pledgers were concerned, they were transferred fraudulently, to harrass complainant.

The bill alleges, further, the sale by Allen Pledger of half of the land and mills to his father, Thomas Pledger, for which he took his note; that the defendant, Thomas Pledger, knew at the time of the purchase by him, of the contract by which the said Allen was to pay all the debts of the partnership. There are many allegations of facts and circumstances in the bill, on which charges of fraud are made, which it is unnecessary to set forth here.

The answers of the defendants deny that the partnership extended to the land and mills; that the defendant, Allen Pledger, was to pay the debts of the mercantile concern, to which alone the partnership extended, except from the assets transferred; and states that the individual liability of complainant remained equally with that of defendant, Allen Pledger, for any balance unpaid by partnership effects; denies that he was to pay the debts or anything to complainant, except conditionally, and refers to the note given by him to complainant, on which defendant was sued but never served, and in which suit he alleges a fraudulent confession

of judgment by an unemployed attorney.   The defendants deny that for the  assigned  writs of *fi. fa.* the  money paid was Allen Pledger's money, but insist  that it was the money of Thomas Pledger.   They deny that  the assets  of the firm were sufficient to pay the debts ; state the amount  that  was received about $500; but they set forth  no schedule of assets, nor any account thereof.

They deny that the note given by  Thomas Pledger  to Allen Pledger, for an interest in  the  land  and  mills,  was not applied to the payment of the debts  of the firm ; but on  the contrary, Allen  Pledger  says  it  was  transferred  to certain creditors of the firm  in  Augusta,  Hand,  Williams & Co., as collateral security for  the payment of  a debt due them, and that he never received one cent from it.   Thomas Pledger, in his amended answer,  says  that he  paid  the said  note to Hand, Williams & Co.,  two years and  six months  before it became due, at a discount of twelve  per cent.

The answers disclose the fact, that complainant filed a bill in equity against Thomas Pledger and the Sheriff,  when a sum of money, raised upon  the sale of Allen  Pledger's property, on  the first Tuesday  in  December,  1852, was in the hands of the Sheriff, and Thomas Pledger interposed the said transferred *fi. fas* to claim it,  in  which bill the  complainant charged that the said  writs  of  *fi. fas,* in favor of Hickman, Westcott & Co., (which were the said transferred *fi. fas,*) had been paid off, and were kept open  fraudulently, for the purpose of defrauding complainant; and it was  prayed that the said money should be paid to the satisfaction of debts against McCauley & Pledger, and to the complainant, for money advanced by him on the sale of his property, to-wit: fifty acres of land he had purchased with  money  of  the  partnership. Before the bill reached a  hearing, it was agreed between the parties that the  bill  should  be  dismissed ; that  Thomas Pledger should withdraw the *fi. fas.* transferred to him, and give further time, and that the money in Court should be applied as follows :

1st. To the payment of an execution in favor of G. W. Terry vs. McCauley & Pledger.

2d. To execution of W. W. Waring & Co. vs. McCauley & Pledger.

3d. To the payment in full of two of the twenty-seven *fi. fas.* of Hickman, Westcott & Co. vs. McCauley & Pledger, still in the hands of the original plaintiff.

4th. To the payment in full of a *fi.fa.* in favor of Clayton & Brigman vs. McCauley & Pledger, and the remainder, being $282 98-100, to the complainant, James McCauley, alleged by him to have been paid by him for McCauley & Pledger.

I believe I have now referred to all the parts of the bill and answers necessary to present the views of the Court. The conditional note referred to in the answers, as set forth in one of the exhibits to Allen Pledger's answer, is in the following words:

" Four months after date I promise to pay to James McCauley, two hundred and eighty-two 98-100 dollars, provided this amount falls due him on a settlement of the firm of McCauley and Pledger, more or less.   16th March, 1852.
            [Signed]                ALLEN PLEDGER."

The presiding Judge in the Court below held, upon a full consideration of the bill and answers thereto, that the injunction ought not to be dissolved. There were as many, certainly, as three issues involved in the bill and answers, to be considered by the Court in making up the judgment. First, whether the partnership extended to the land and mills; second, whether the contract, at the dissolution of the partnership, bound Allen Pledger to pay the debts of the partnership irrespective of the assets; and third, whether there was fraud in the assignment of the judgments or *fi. fas.* by Hickman, Westcott & Co. to Thomas Pledger.

In respect to the first issue, the answer of one of the de-

fendants is, that the complainant, after the establishment of the mercantile concern, attended to the store, and the defendant, Allen Pledger, attended to the mill. According to the answer of the other defendant, he worked sometimes at the store and sometimes at the mill. The conditional note given by Allen Pledger to McCauley, taken in connection with the arrangement made at the time the first bill was dismissed, is some evidence on this point. The amount of the note was to be paid to the complainant, provided that amount falls due to him, on a settlement of the firm of McCauley & Pledger. When the first bill was dismissed, the money in the Sheriff's hands was paid to the debts of McCauley & Pledger, except the sum of $282 98, which was paid to complainant, for money paid by him for McCauley & Pledger. If McCauley was to pay, why reimburse him from the money of his copartner? The amended answer of Allen Pledger says, that the firm, that is, the mercantile firm of Allen Pledger, was worth about the sum of five hundred dollars only, in notes, books and accounts, and some remnants of goods, and yet, the entire amount of the money in the hands of the Sheriff, raised from the sale of what is stated in the answers to have been the individual property of Allen Pledger, was applied to the payment of the debts of the firm of McCauley & Pledger, and to reimburse McCauley in a sum alleged by him to have been paid for them.

The same facts and circumstances may be referred to in considering the second issue. In reference to the third matter, to-wit: whether the assignment of the *fi. fas.* to Thomas Pledger was fraudulent or not, the fact that he yielded to the demand of McCauley in the first bill, that the money in the hands of the Sheriff should be applied to the payment of debts, exclusive of his own, due by the firm of McCauley & Pledger, and to the reimbursement of McCauley, one of the members of that firm, who was his creditor, if the transfer was free from fraud, is entitled to much consideration.

It is, however, by no means conclusive; for the defendant,

Pledger and Pledger vs. McCauley.

Thomas Pledger, may have had a sufficient motive for his conduct, if the transfer was *bona fide*, and the debt was really due him. But we are now considering whether the equity of the bill was fully denied by the answers. So much for the points above named.

There is another matter connected with these transactions to be noticed. Allen Pledger turned over to Hand, Williams & Co., the notes of Thomas Pledger, as collateral security for a debt due them by McCauley & Pledger. Thomas Pledger bought up that note, having two years and an half to run, at twelve per cent. discount. A creditor holding collaterals has no right to make such a sacrifice of the securities of his debtor. The interest of Allen Pledger was certainly sacrificed in this arrangement, and he had a right to call on his creditor to allow him the full amount of the collateral security, less the legal discount, on his debt; and there being no evidence that he did not submit quietly to the loss, might, taken in connection with his relationship to one of the parties, and the extraordinary length of time to which the credit was extended, be regarded as throwing suspicion on the transactions between him and his father; but it should be remarked that it affords no conclusive presumption of wrong.

Again; the defendant, Allen Pledger, gives no account of the stock of goods on hand, the notes, book accounts, &c.; but contents himself with making a lumping estimate of them all, at about five hundred dollars. He ought to be able to show an account of the stock on hand at that time, and furnish a schedule of notes and accounts due, and what was collected on them. He may be able to make such an exhibit now. The Court below, under all these circumstances, did right in refusing the motion.

Judgment affirmed